UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT ANDREW WITZKE,

        Plaintiff,                Civil Case No. 20-12594
                                          Honorable Linda V. Parker

v.

JEFF DONOFRIO, et al.,

        Defendant.
_____/

**<u>OPINION AND ORDER DENYING PLAINTIFF WITZKE'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER, OR, IN THE ALTERNATIVE, MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 3)</u>**

On August 25, 2020, Michigan's Unemployment Insurance Agency issued a determination letter stating that Plaintiff Scott Andrew Witzke—who claimed to be self-employed in 2019 and 2020—was eligible for Pandemic Unemployment Assistance benefits. Three weeks later, the agency reversed course and issued a letter stating that he was not. On September 21, Plaintiff initiated this *pro se* action pursuant to 42 U.S.C. § 1983 against Defendant Jeff Donofrio, the Director of Michigan's Department of Labor and Economic Opportunity,[1] alleging retaliation in violation of his First Amendment free speech rights and lack of procedural due

---

[1] Michigan's Unemployment Insurance Agency is an agency within the State's Department of Labor and Economic Opportunity.

1

process in violation of the Due Process Clause of the Fourteenth Amendment. (ECF No. 1.)

Presently before the Court is Plaintiff's Ex Parte Motion for Temporary Restraining Order, or, in the Alternative, Motion for Preliminary Injunction. (ECF No. 3.) The motion has been fully briefed (ECF Nos. 13, 14) and the Court held a hearing with respect to the motion on October 23, 2020. For the reasons discussed below, the Court denies Plaintiff's motion.

## FACTUAL BACKGROUND

In response to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") on March 27, 2020. Pub. L. No. 116-136, 134 Stat. 281 (2020). The statute created the Pandemic Unemployment Assistance ("PUA") program, which provides unemployment assistance through state agencies for individuals who are not eligible for regular unemployment compensation or extended benefits under State or Federal law. § 2102(a)(3)(A)(i).

To qualify as a "covered individual" and receive PUA benefits, individuals must self-certify that they are: (1) self-employed; (2) seeking part-time employment; (3) lack sufficient work history; or (4) otherwise would not qualify for regular unemployment compensation or extended benefits. § 2102(a)(3)(A)(ii)(I, II). Individuals must also self-certify that they are capable of working, but are

unemployed, partially employed, or unable to work due to any one of 11 reasons related to the COVID-19 pandemic.[2] *Id.* Once approved, individuals may receive up to 39 weeks of benefits for weeks of unemployment between January 27, 2020, and December 31, 2020. § 2102(c)(1, 2).

Section 2102(h) of the Cares Act provides that 20 C.F.R. § 625 applies "[e]xcept as otherwise provided in this section and to the extent that there is a conflict between [§ 2102] and [20 C.F.R. § 625]." Section 625.9(a)(1) of the regulations states that "[t]he State agency shall promptly, upon the filing of an initial

---

[2] The 11 reasons include: "(aa) the individual has been diagnosed with COVID–19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis; (bb) a member of the individual's household has been diagnosed with COVID-19; (cc) the individual is providing care for a family member or a member of the individual's household who has been diagnosed with COVID-19; (dd) a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work; (ee) the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency; (ff) the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19; (gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID-19 public health emergency; (hh) the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID-19; (ii) the individual has to quit his or her job as a direct result of COVID-19; (jj) the individual's place of employment is closed as a direct result of the COVID-19 public health emergency; or (kk) the individual meets any additional criteria established by the Secretary for unemployment assistance under this section." CARES Act, Pub. L. No. 116-136, § 2102(a)(3)(A)(ii)(I, II), 134 Stat. at 313-14.

application for [PUA], determine whether the individual is eligible, and if the individual is found to be eligible, the weekly amount of [PUA] payable to the individual." 20 C.F.R. § 625.9(a)(1) (emphasis added).

Section 2102 of the CARES Act further provides that, "[i]n the case of a[n] individual who is self-employed, . . . the assistance authorized . . . shall be calculated in accordance with [20 C.F.R. § 625.6]." § 2102(d)(2). Section 625.6(e)(1) of the regulations states that when a state agency determines an individual's weekly amount "based solely on the individual's statement" of self-employment and wages, "the individual shall furnish documentation to substantiate the . . . self-employment or wages earned from . . . such . . . self-employment . . . . [D]ocumentation shall be submitted within 21 calendar days of the filing of the initial application for [PUA]." Section 625.6(e)(2) of the regulations further states:

> ***Any individual who fails to submit documentation to substantiate employment or self-employment . . . in accordance with paragraph (e)(1) of this section, shall be determined ineligible for the payment of [PUA] for any week of unemployment due to the [pandemic]***. Any weeks for which [PUA] was already paid on the application prior to the date of the determination of ineligibility under this paragraph (e)(2) are overpaid and a determination shall be issued in accordance with § 625.14(a). In addition, the State agency shall consider whether the individual is subject to a disqualification for fraud in accordance with the provisions set forth in § 625.14(i).

20 C.F.R. § 625.6(e)(2) (emphasis added).

Michigan, through its Unemployment Insurance Agency ("UIA"), set up a

4

PUA program for potential applicants. (*See* ECF No. 1 at Pg. ID 4, ¶ 7.) The UIA operates a web-based service known as MiWAM, through which individuals apply for PUA benefits and UIA staff correspond with applicants and provide determinations. (*Id.* at Pg. ID 7, ¶ 17.) Michigan's PUA application notes that applicants "must provide a statement or proof of income. If proof of income is not provided, [the applicant] will be paid the minimum benefit amount of $160 per week. [Applicants] will have until December 26, 2020, to submit proof of income to increase [their] minimum weekly amount." (PUA Application, Attachment 6, ECF No. 13 at Pg. ID 250, 252.)

On August 22, 2020, Plaintiff completed a PUA application via MiWAM. (*Id.* at Pg. ID 4, ¶ 7.) In his application, Plaintiff self-certified that he was self-employed in 2019 and 2020, was seeking part-time employment, lacked sufficient work history, and would not qualify for regular unemployment compensation or extended benefits. (PUA Application, Attachment 6, ECF No. 13 at Pg. ID 251.) Plaintiff also self-certified that he earned wages while employed in 2019 and 2020.[3] (*Id.*) Plaintiff submitted his application without self-certifying that he was unemployed or underemployed due to any of the 11 reasons related to the COVID-19 pandemic, and without uploading documentation substantiating his prior

---

[3] Michigan's PUA application does not request self-certification regarding the amount of wages. (*See* PUA Application, Attachment 6, ECF No. 13 at Pg. ID 251.)

5

employment or proof of the wages earned therein. (*Id.*)

On August 25, the UIA forwarded Plaintiff a letter titled, "Pandemic Unemployment Assistance Monetary Determination" ("First Determination Letter"). (ECF No. 1 at Pg. ID 4, ¶ 9.) The First Determination Letter states: "Based on information provided, it is determined you qualify for 39.00 weeks of PUA benefits. Your weekly benefit entitlement is $160.00. This determination is effective beginning 15-Mar-2020." (Attachment 7, ECF No. 13 at Pg. ID 263.) The letter further states:

> If you did not provide any income, you received the minimum PUA weekly benefit amount of 160.00. If you provided income but did not provide proof of that income during your claim filing, you are required to submit proof within 21 days of the mail date of this determination. If you do not provide proof of income you have certified to, your weekly benefit amount will be reduced to the minimum 160.00 payment per week.

(*Id.*)

On August 25, the UIA forwarded Plaintiff an additional letter, titled "Request for Information: Verify Your Identity or Claim Will be Denied." (Attachment 8, ECF No. 13 at Pg. ID at 268.) The letter stated that the UIA was unable to verify Plaintiff's identity based on the information he provided and requested that Plaintiff provide proof of his identity. (*Id.*) Plaintiff forwarded the requested documents on the same day. (Attachment 9, ECF No. 13 at Pg. ID 273.)

On August 30, the UIA informed Plaintiff that "[his] identity ha[d] been

6

successfully verified." (*Id.* at Pg. ID 274.) The UIA also wrote: "If you have continued to certify and there are no other issues on your claim, you can expect to receive payment within 5 - 7 days." (*Id.*) Plaintiff alleges that the status of his PUA application, as noted by the MiWAM, changed to "Processed — Pending Payment." (ECF No. 1 at Pg. ID 5, ¶ 12.)

On September 10, Plaintiff wrote the UIA, stating in relevant part:

> It has been some time now since the 7-days has elapsed and I have not been paid. Moreover, after identity verification I certified for two additional weeks and I was told that the certification was successful and that I would be paid within 24 hours. This, too, did not occur. If I am not paid on Friday, September 11, 2020, I am filing a lawsuit in the circuit court for a writ of mandamus and temporary restraining order.

(Attachment 10, ECF No. 13 at Pg. ID 276.)

On September 14, Plaintiff commenced an action for writ of mandamus in the Washtenaw County Circuit Court, seeking to force Defendant to disburse the PUA benefits. (ECF No. 1 at Pg. ID 5, ¶ 13 (citing *Scott Andrew Witzke v. Jeff Donofrio*, 2020-917-AW).)[4] Plaintiff alleges that, on the same day, shortly after the state court action was filed, the UIA responded to Plaintiff's September 10 communication. (*Id.* at Pg. ID 5, ¶ 14.) The UIA "apologize[d] for the late response" and stated that Plaintiff's "benefit payment that is pending has to be reviewed prior to the payment

---

[4] The state court case remains pending.

7

being released." (Attachment 10, ECF No. 13 at Pg. ID 276.)  Plaintiff responded 40 minutes later, stating: "So now that I have asked a court for assistance all of the sudden my status has changed from 'Processed/Pending Payment' to 'No Payment Issued'? Why?" (*Id.*)  Three hours later, the UIA responded, stating in relevant part:

> The agency needs more information in order to approve your payment. Please let us know your employment history in 2019 and 2020. When you submitted your [PUA] application, you indicated that you worked and earned wages in employment, self-employment, 1099 employer or as a farm worker in 2019 and 2020. The agency has no record of your employment wages from 2019 or 2020. Did you work in 2019 and or 2020 as a 1099 employee? If so, please let us know the dates of employment and the names of each employer. Were you self employed during this time period? If so, what is the name of your business and what type of work have you been performing? The agency needs your proof of income for 2019 and 2020. Please submit copies of 1099, W2 earnings or income statements from 2019 and 2020.

(*Id.*)  The UIA obtained records that showed Plaintiff earned wages earned in December 2017, March 2018 and June 2018.  (Attachment 11, ECF No. 13 at Pg. ID 278.)

The next day, on September 15, Plaintiff received a letter titled, "Pandemic Unemployment Assistance Monetary Determination" ("Second Determination Letter"). (Attachment 12, ECF No. 13 at Pg. ID 281.)  The Second Determination Letter stated: "Based on information provided, it is determined that you do not meet

the PUA eligibility requirements" because "[y]ou have not established that you were employed during 2019 or 2020 which is the prescribed period for establishing PUA entitlement," and "[y]ou have not established that your separation reason is COVID-related."  (*Id*.)

On the same day, Plaintiff filed a written "Protest," triggering the referral of the case for a hearing before an administrative law judge.  (ECF No. 1 at Pg. ID 7, ¶ 16 (citing Attachment 13, ECF No. 13 at Pg. ID 290)); Mich. Comp. Laws § 421.32a(1).  This administrative appeal remains pending.

## APPLICABLE LAW

In evaluating a request for a preliminary injunction, a district court should consider: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without a preliminary injunction; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.  *American Imaging Servs., Inc. v. Eagle-Picher Indus., Inc.*, 963 F.2d 855, 858 (6th Cir. 1992).  "[T]he four considerations applicable to preliminary injunctions are factors to be balanced and not prerequisites that must be satisfied."  *Id*. at 859.  "These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements."  *Id*.

"[T]he proof required for the plaintiff to obtain a preliminary injunction is

much more stringent than the proof required to survive a summary judgment motion" because a preliminary injunction is an extraordinary remedy. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). The party seeking the preliminary injunction bears the burden of justifying such relief, including showing irreparable harm and likelihood of success. *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 441 (1974).

## ANALYSIS

The Court first turns to whether Plaintiff is likely to succeed on the merits of his procedural due process claim.[5] The Fourteenth Amendment provides that "[n]o state shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Albrecht v. Treon*, 617 F.3d 890, 894 (6th Cir. 2010) (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (citation omitted)).

"To have a property interest in a benefit, a person clearly must have more than

---

[5] During the hearing, Plaintiff confirmed that he is not seeking preliminary relief based on his retaliation claim.

10

an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Property interests "are created and their dimensions are defined by . . . independent source[s]" such as state and federal statutes. *See id.* at 576. Such statutes are what "support claims of entitlement to those benefits." *Id*. (suggesting that a claim of entitlement to benefits must be "grounded in the statute defining eligibility for them").

Here, Plaintiff argues that § 2102(a)(3)(i) and (ii)(I)(ll) of the CARES Act establish his entitlement to the PUA benefits. (ECF No. 3 at Pg. ID 90.) Plaintiff's argument is not persuasive because, based on his application, he is not eligible to receive PUA benefits. Plaintiff self-certified that he was self-employed in 2019 and 2020. (PUA Application, Attachment 6, ECF No. 13 at Pg. ID 251.) According to 20 C.F.R. § 625.6(e) as made applicable by § 2102(d)(2) of the CARES Act, individuals are ineligible for PUA benefits for any week of unemployment due to the pandemic if they fail to furnish documentation to substantiate their statement of self-employment or the wages earned therein within 21 calendar days of the filing of the initial PUA application. During the hearing, Plaintiff conceded that he did not provide such documentation. He further conceded that he did not self-certify that he was unemployed or underemployed due to one of the 11 reasons related to the COVID-19 pandemic. For these reasons, Plaintiff is ineligible for PUA benefits and

11

does not have a property interest in them. *See Roth*, 408 U.S. at 576.

Plaintiff argues that § 2102(a)(3)(i) and (ii)(I)(ll) "provide[] for self-certification" and "make[] abundantly clear that one need not have the usual and customary work history or otherwise qualify in the normal sense for unemployment benefits in order to be approved for PUA benefits." (ECF No. 3 at Pg. ID 90.) Statutes, however, must be read as a whole. *See Massachusetts v. Morash*, 490 U.S. 107, 115 (1989). While it is true that individuals may opt to self-certify that they "do not have sufficient work history" or "otherwise would not qualify for regular unemployment," those who self-certify that they are "self-employed" must provide supporting documentation within 21 days. CARES Act, Pub. L. No. 116-136, § 2102(a)(3)(A)(ii)(II), (d)(2), 134 Stat. at 314-15 (incorporating 20 C.F.R. § 625.6). Despite self-certifying that he was self-employed in 2019 and 2020, Plaintiff failed to provide substantiating documentation within 21 days of his PUA application. As noted above, one of the reasons Plaintiff's procedural due process claim fails is because he did not provide the requisite documents within the requisite timeframe, and thus does not have a legitimate claim of entitlement to PUA benefits.

Plaintiff further argues that his property interest in the PUA benefits was established upon receipt and based on the contents of the First Determination Letter. (ECF No. 3 at Pg. ID 93 n.4.) The Court remains unpersuaded. The regulations, as

made applicable by § 2102(h) of the CARES Act, state that "[t]he provisions of the applicable State law concerning the . . . authority to undertake[] reconsideration of a determination pertaining to regular compensation under the applicable State law shall apply to determinations pertaining to [PUA]." 20 CFR § 625.9(c). In other words, the federal statutory scheme providing for PUA benefits explains that determinations are subject to redeterminations as articulated by state law. In light of this statutory language, an applicant would not be justified in believing the original determination falls outside the purview of the relevant state's redetermination scheme, provided the state's redetermination scheme is followed. *Cf. Hamby v. Neel*, 368 F.3d 549, 559 (6th Cir. 2004). Though Plaintiff argues that Defendant cannot "reverse the prior grant of PUA benefits" in the manner which Defendant did "because there are rules applicable to a 'redetermination,'" (ECF No. 3 at Pg. ID 89), Plaintiff does not identify any state law that Defendant did not abide by when making their redetermination decision or explain how Defendant failed to abide by them. Thus, based on Plaintiff's motion alone, it is unclear whether Plaintiff's claim that the First Determination Letter entitles him to the PUA benefits constitutes an abstract, unilateral expectation, or one grounded in federal and state law.

Fortunately, the Court's own review of Michigan's statutory scheme sheds light on this issue. Michigan Compiled Law § 421.32a(1) states:

> Upon application by an interested party for review of a determination, upon request for transfer to an administrative

13

> law judge for a hearing filed with the unemployment agency within 30 days after the mailing or personal service of a notice of determination, ***or upon the unemployment agency's own motion within that 30-day period, the unemployment agency shall review any determination***. After review, ***the unemployment agency shall in its discretion issue a redetermination*** affirming, modifying, or reversing the prior determination and stating the reasons for the redetermination, or may transfer the matter to an administrative law judge for a hearing. If the unemployment agency issues a redetermination, it shall promptly notify the interested parties of the redetermination.

(emphasis added).

Here, the Court does not see—and Plaintiff does not point out—how Defendant erred in applying Michigan's statutory redetermination framework. The Second Determination Letter modified the first and stated the reasons for the redetermination. (Attachment 12, ECF No. 13 at Pg. ID 281.) The UIA issued the First Determination Letter on August 25 and issued the Second Determination Letter—which Plaintiff concedes was a "redetermination" (ECF No. 3 at Pg. ID 88-89)—on September 15, which is within the 30 days provided for the agency to tap into its power to reconsider decisions. Any argument suggesting that issuing the redetermination fell outside the UIA's powers as established by state law is not likely to succeed on the merits.

The Court recognizes that Plaintiff may have hoped to receive PUA benefits based upon the UIA's decision to issue an immediate determination of a weekly amount, despite Plaintiff's failure to demonstrate eligibility for the PUA benefits by

14

self-certifying that he is unemployed because of one of the 11 reasons related to the COVID-19 pandemic.  The Court also recognizes that the UIA creates confusion and invites litigation when it informs ostensibly self-employed individuals that, "[i]f [they] do not provide proof of [the] income [they] have certified to" within 21 days, "[their] weekly benefit amount will be reduced to the minimum of $160.00 per week."  (First Determination Letter, Attachment 7, ECF No. 13 at Pg. ID 263; *see also* PUA Application, Attachment 6, ECF No. 13 at Pg. ID 250, 252.)  This statement directly contradicts the regulations incorporated into the CARES Act, which establish that those who fail to provide such documentation within 21 days of submitting their PUA application "shall be determined ineligible for the payment of [PUA] for any week of unemployment due to the [pandemic]."  CARES Act, Pub. L. No. 116-136, § 2102(d)(2), 134 Stat. at 315 (incorporating 20 C.F.R. § 625.6(e)).  In fact, the regulation encourages state agencies to consider whether an individual who fails to provide substantiating documentation should be disqualified from receiving PUA benefits due to fraud.  20 C.F.R. § 625.6(e)(2).[6]  The UIA's management of the PUA program nevertheless does not *entitle* Plaintiff to the PUA benefits, or otherwise establish a protectable property interest sufficient to trigger due process protections under the Fourteenth Amendment.

---

[6] Surely, Michigan does not plan on handing out weekly checks to individuals who may be committing fraud; why the UIA would suggest otherwise is beyond this Court's comprehension.

15

Regarding the second factor—irreparable harm—Plaintiff states that, "[t]hus far, [he] has met his daily living expenses—barely," and "is suffering now an economic hardship." (ECF No. 3 at Pg. ID 91-92.) Plaintiff further argues that "there is clear uncertainty right now [regarding] exactly how grievous Plaintiff's hardship will get." (*Id.*) Given Plaintiff's economic circumstances, coupled with the exacerbating economic and public health impact of the COVID-19 crisis, the denial of PUA benefits to eligible individuals unquestionably constitutes irreparable harm. *See Day v. Shalala*, 23 F.3d 1052, 1059 (6th Cir. 1994) ("The fact that plaintiffs may eventually receive full retroactive benefits does not require the conclusion that their injury is not irreparable. . . . '[S]uffering months of delay in receiving the income on which one has depended for the very necessities of life cannot be fully remedied by the 'belated restoration of back benefits.'")

The remaining factors, "harm to the opposing party and weighing the public interest[,] . . . merge when the Government is the opposing party," *Nken v. Holder*, 556 U.S. 418, 435 (2009), because "the government's interest is the public interest," *Malam v. Adducci*, 452 F. Supp. 3d 643, 661-62 (E.D. Mich. 2020), *as amended* (Apr. 6, 2020) (quoting *Pursuing America's Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 512 (D.C. Cir. 2016) (citing *Nken*, 556 U.S. at 435)). On one hand, Defendant has no cognizable interest in failing to pay PUA benefits when due and, in light of the emergency nature of the PUA funding and the public health

16

and economic circumstances in which this case arises, the public interest in an injunction is significant. On the other hand, Defendant has no interest in paying PUA benefits when they are not due and, in fact, has an interest in preventing the fraudulent receipt of public assistance benefits. The latter is especially so when there is no guarantee that the funds will be recovered. In the end, this factor does not favor the grant or denial of the preliminary injunction motion.

## CONCLUSION

Upon careful consideration of the record and for the reasons stated above, the Court finds that Plaintiff's failure to show a likelihood of success on the merits of his procedural due process claim is—when balanced with the other factors—significant enough to prevent the injunction from issuing.

Accordingly,

**IT IS ORDERED** that Plaintiff Witzke's Ex Parte Motion for Temporary Restraining Order, or, in the Alternative, Motion for Preliminary Injunction (ECF No. 3) is **DENIED**.

**IT IS SO ORDERED**.

                                             s/ Linda V. Parker
                                             LINDA V. PARKER
                                             U.S. DISTRICT JUDGE

Dated: November 2, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of

record and/or pro se parties on this date, November 2, 2020, by electronic and/or U.S. First Class mail.

                                                s/ R. Loury
                                                Case Manager