UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT ANDREW WITZKE,

        Plaintiff,                Civil Case No. 20-12594
                                                  Honorable Linda V. Parker

v.

JEFF DONOFRIO, et. al.,

        Defendants.
_____/

## OPINION AND ORDER GRANTING MOTION TO DISMISS
## (ECF NO. 16)

On August 25, 2020, Michigan's Unemployment Insurance Agency issued a determination letter stating that Plaintiff Scott Andrew Witzke—who claimed to be self-employed in 2019 and 2020—was eligible for Pandemic Unemployment Assistance benefits. Three weeks later, the agency reversed course and issued a letter stating that he was not. On September 21, Plaintiff initiated this *pro se* action pursuant to 42 U.S.C. § 1983 against Defendant Jeff Donofrio, the Director of Michigan's Department of Labor and Economic Opportunity,[1] and "John Does," "other unknown persons in their official capacities," alleging retaliation in violation of his First Amendment free speech rights and lack of procedural due

---

[1] Michigan's Unemployment Insurance Agency is an agency within the State's Department of Labor and Economic Opportunity.

1

process in violation of the Due Process Clause of the Fourteenth Amendment. (ECF No. 1.) On November 2, the Court denied Plaintiff's Ex Parte Motion for Temporary Restraining Order or, in the Alternative, Motion for Preliminary Injunction. (ECF No. 19.)

Presently before the Court is Defendant Donofrio's Motion to Dismiss, filed on October 19, 2020. (ECF No. 16.) Plaintiff did not file a response brief within the 21 days that followed submission of the motion. On November 10, the Court ordered Plaintiff to show cause, in writing, by no later than December 1, why Defendant's motion should not be granted. (ECF No. 20.) Plaintiff did not respond to the Court's order. For the reasons discussed below, the Court grants Defendant's motion.[2]

## FACTUAL BACKGROUND

In response to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") on March 27, 2020. Pub. L. No. 116-136, 134 Stat. 281 (2020). The statute created the Pandemic Unemployment Assistance ("PUA") program, which provides unemployment assistance through state agencies for individuals who are not eligible for regular unemployment compensation or extended benefits under State or Federal law.

---

[2] Plaintiff's claims against the "John Does" are the same as those against Defendant Donofrio and they fail for the same reasons.

2

§ 2102(a)(3)(A)(i).

To qualify as a "covered individual" and receive PUA benefits, individuals must self-certify that they are: (1) self-employed; (2) seeking part-time employment; (3) lack sufficient work history; or (4) otherwise would not qualify for regular unemployment compensation or extended benefits. § 2102(a)(3)(A)(ii)(I, II). Individuals must also self-certify that they are capable of working, but are unemployed, partially employed, or unable to work due to any one of 11 reasons related to the COVID-19 pandemic.[3] *Id.* Once approved,

---

[3] The 11 reasons include: "(aa) the individual has been diagnosed with COVID–19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis; (bb) a member of the individual's household has been diagnosed with COVID-19; (cc) the individual is providing care for a family member or a member of the individual's household who has been diagnosed with COVID-19; (dd) a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work; (ee) the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency; (ff) the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19; (gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID-19 public health emergency; (hh) the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID-19; (ii) the individual has to quit his or her job as a direct result of COVID-19; (jj) the individual's place of employment is closed as a direct result of the COVID-19 public health emergency; or (kk) the individual meets any additional criteria established by the Secretary for unemployment assistance under this section." CARES Act, Pub. L. No. 116-136, § 2102(a)(3)(A)(ii)(I, II), 134 Stat. at 313-14.

individuals may receive up to 39 weeks of benefits for weeks of unemployment between January 27, 2020, and December 31, 2020. § 2102(c)(1, 2).

Section 2102(h) of the Cares Act provides that 20 C.F.R. § 625 applies "[e]xcept as otherwise provided in this section and to the extent that there is a conflict between [§ 2102] and [20 C.F.R. § 625]." Section 625.9(a)(1) of the regulations states that "[t]he State agency shall promptly, upon the filing of an initial application for [PUA], determine whether the individual is eligible, and if the individual is found to be eligible, the weekly amount of [PUA] payable to the individual." 20 C.F.R. § 625.9(a)(1) (emphasis added).

Section 2102 of the CARES Act further provides that, "[i]n the case of a[n] individual who is self-employed, . . . the assistance authorized . . . shall be calculated in accordance with [20 C.F.R. § 625.6]." § 2102(d)(2). Section 625.6(e)(1) of the regulations states that when a state agency determines an individual's weekly amount "based solely on the individual's statement" of self-employment and wages, "the individual shall furnish documentation to substantiate the . . . self-employment or wages earned from . . . such . . . self-employment . . . . [D]ocumentation shall be submitted within 21 calendar days of the filing of the initial application for [PUA]." Section 625.6(e)(2) of the regulations further states:

> ***Any individual who fails to submit documentation to substantiate employment or self-employment . . . in accordance with paragraph (e)(1) of this section, shall be determined ineligible for the payment of [PUA] for any***

4

> ***week of unemployment due to the [pandemic].*** Any weeks for which [PUA] was already paid on the application prior to the date of the determination of ineligibility under this paragraph (e)(2) are overpaid and a determination shall be issued in accordance with § 625.14(a). In addition, the State agency shall consider whether the individual is subject to a disqualification for fraud in accordance with the provisions set forth in § 625.14(i).

20 C.F.R. § 625.6(e)(2) (emphasis added).

Michigan, through its Unemployment Insurance Agency ("UIA"), set up a PUA program for potential applicants. (*See* ECF No. 1 at Pg. ID 4, ¶ 7.) The UIA operates a web-based service known as MiWAM, through which individuals apply for PUA benefits and UIA staff correspond with applicants and provide determinations. (*Id.* at Pg. ID 7, ¶ 17.) Michigan's PUA application notes that applicants "must provide a statement or proof of income. If proof of income is not provided, [the applicant] will be paid the minimum benefit amount of $160 per week. [Applicants] will have until December 26, 2020, to submit proof of income to increase [their] minimum weekly amount." (PUA Application, Attachment 6, ECF No. 13 at Pg. ID 250, 252.)[4]

On August 22, 2020, Plaintiff completed a PUA application via MiWAM.

---

[4] The Court cites to exhibits attached to Defendant's response to Plaintiff's Motion for Preliminary Injunction as they are "items appearing in the record of the case," "referred to in the [c]omplaint and [] central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

5

(ECF No. 1 at Pg. ID 4, ¶ 7.) In his application, Plaintiff self-certified that he was self-employed in 2019 and 2020, was seeking part-time employment, lacked sufficient work history, and would not qualify for regular unemployment compensation or extended benefits. (PUA Application, Attachment 6, ECF No. 13 at Pg. ID 251.) Plaintiff also self-certified that he earned wages while employed in 2019 and 2020.[5] (*Id.*) Plaintiff submitted his application without self-certifying that he was unemployed or underemployed due to any of the 11 reasons related to the COVID-19 pandemic, and without uploading documentation substantiating his prior employment or proof of the wages earned therein. (*Id.*)

On August 25, the UIA forwarded Plaintiff a letter titled, "Pandemic Unemployment Assistance Monetary Determination" ("First Determination Letter"). (ECF No. 1 at Pg. ID 4, ¶ 9.) The First Determination Letter states: "Based on information provided, it is determined you qualify for 39.00 weeks of PUA benefits. Your weekly benefit entitlement is $160.00. This determination is effective beginning 15-Mar-2020." (Attachment 7, ECF No. 13 at Pg. ID 263.) The letter further states:

> If you did not provide any income, you received the minimum PUA weekly benefit amount of 160.00. If you provided income but did not provide proof of that income during your claim filing, you are required to submit proof

---

[5] Michigan's PUA application does not request self-certification regarding the amount of wages. (*See* PUA Application, Attachment 6, ECF No. 13 at Pg. ID 251.)

> within 21 days of the mail date of this determination. If you do not provide proof of income you have certified to, your weekly benefit amount will be reduced to the minimum 160.00 payment per week.

(*Id.*)

On August 25, the UIA forwarded Plaintiff an additional letter, titled "Request for Information: Verify Your Identity or Claim Will be Denied." (Attachment 8, ECF No. 13 at Pg. ID at 268.) The letter stated that the UIA was unable to verify Plaintiff's identity based on the information he provided and requested that Plaintiff provide proof of his identity. (*Id.*) Plaintiff forwarded the requested documents on the same day. (Attachment 9, ECF No. 13 at Pg. ID 273.)

On August 30, the UIA informed Plaintiff that "[his] identity ha[d] been successfully verified." (*Id.* at Pg. ID 274.) The UIA also wrote: "If you have continued to certify and there are no other issues on your claim, you can expect to receive payment within 5 - 7 days." (*Id.*) Plaintiff alleges that the status of his PUA application, as noted by the MiWAM, changed to "Processed — Pending Payment." (ECF No. 1 at Pg. ID 5, ¶ 12.)

On September 10, Plaintiff wrote the UIA, stating in relevant part:

> It has been some time now since the 7-days has elapsed and I have not been paid. Moreover, after identity verification I certified for two additional weeks and I was told that the certification was successful and that I would be paid within 24 hours. This, too, did not occur. If I am not paid on Friday, September 11, 2020, I am filing a lawsuit in the circuit court for a writ of mandamus and

7

temporary restraining order.

(Attachment 10, ECF No. 13 at Pg. ID 276.)

On September 14, Plaintiff commenced an action for writ of mandamus in the Washtenaw County Circuit Court, seeking to force Defendant to disburse the PUA benefits. (ECF No. 1 at Pg. ID 5, ¶ 13 (citing *Scott Andrew Witzke v. Jeff Donofrio*, 2020-917-AW).) Plaintiff alleges that, on the same day, shortly after the state court action was filed, the UIA responded to Plaintiff's September 10 communication. (*Id.* at Pg. ID 5, ¶ 14.) The UIA "apologize[d] for the late response" and stated that Plaintiff's "benefit payment that is pending has to be reviewed prior to the payment being released." (Attachment 10, ECF No. 13 at Pg. ID 276.) Plaintiff responded 40 minutes later, stating: "So now that I have asked a court for assistance all of the sudden my status has changed from 'Processed/Pending Payment' to 'No Payment Issued'? Why?" (*Id.*) Three hours later, the UIA responded, stating in relevant part:

> The agency needs more information in order to approve your payment. Please let us know your employment history in 2019 and 2020. When you submitted your [PUA] application, you indicated that you worked and earned wages in employment, self-employment, 1099 employer or as a farm worker in 2019 and 2020. The agency has no record of your employment wages from 2019 or 2020. Did you work in 2019 and or 2020 as a 1099 employee? If so, please let us know the dates of employment and the names of each employer. Were you self employed during this time period? If so, what is the name of your business and what type of work have you

8

>been performing? The agency needs your proof of income for 2019 and 2020. Please submit copies of 1099, W2 earnings or income statements from 2019 and 2020.

(*Id.*) The UIA obtained records that showed Plaintiff earned wages earned in December 2017, March 2018 and June 2018. (Attachment 11, ECF No. 13 at Pg. ID 278.)

The next day, on September 15, Plaintiff received a letter titled, "Pandemic Unemployment Assistance Monetary Determination" ("Second Determination Letter"). (Attachment 12, ECF No. 13 at Pg. ID 281.) The Second Determination Letter stated: "Based on information provided, it is determined that you do not meet the PUA eligibility requirements" because "[y]ou have not established that you were employed during 2019 or 2020 which is the prescribed period for establishing PUA entitlement," and "[y]ou have not established that your separation reason is COVID-related." (*Id*.)

On the same day, Plaintiff filed a written "Protest," triggering the referral of the case for a hearing before an administrative law judge. (ECF No. 1 at Pg. ID 7, ¶ 16 (citing Attachment 13, ECF No. 13 at Pg. ID 290)); Mich. Comp. Laws § 421.32a(1). This administrative appeal remains pending.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134

9

(6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions,

10

however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## ANALYSIS

The Court first turns to whether Defendant violated Plaintiff's procedural due process rights. The Fourteenth Amendment provides that "[n]o state shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by

11

the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Albrecht v. Treon*, 617 F.3d 890, 894 (6th Cir. 2010) (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (citation omitted)).

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Property interests "are created and their dimensions are defined by . . . independent source[s]" such as state and federal statutes. *See id.* at 576. Such statutes are what "support claims of entitlement to those benefits." *Id.* (suggesting that a claim of entitlement to benefits must be "grounded in the statute defining eligibility for them").

Here, Plaintiff alleges that § 2102(a)(3)(i) and (ii)(I)(ll) of the CARES Act establish his entitlement to the PUA benefits. (ECF No. 1 at Pg. ID 8, ¶ 22.) The Court is unpersuaded because, based on Plaintiff's application, he is not eligible to receive PUA benefits. Plaintiff self-certified that he was self-employed in 2019 and 2020. (PUA Application, Attachment 6, ECF No. 13 at Pg. ID 251.) According to 20 C.F.R. § 625.6(e) as made applicable by § 2102(d)(2) of the CARES Act, individuals are ineligible for PUA benefits for any week of

unemployment due to the pandemic if they fail to furnish documentation to substantiate their statement of self-employment or the wages earned therein within 21 calendar days of the filing of the initial PUA application. Plaintiff does not dispute that he did not provide such documentation. Plaintiff also does not dispute that he did not self-certify that he was unemployed or underemployed due to one of the 11 reasons related to the COVID-19 pandemic. For these reasons, Plaintiff is ineligible for PUA benefits and does not have a property interest in them. *See Roth*, 408 U.S. at 576.

To the extent that Plaintiff alleges that his property interest in the PUA benefits was established upon receipt and based on the contents of the First Determination Letter, the Court remains unpersuaded. The regulations, as made applicable by § 2102(h) of the CARES Act, state that "[t]he provisions of the applicable State law concerning the . . . authority to undertake[] reconsideration of a determination pertaining to regular compensation under the applicable State law shall apply to determinations pertaining to [PUA]." 20 CFR § 625.9(c). In other words, the federal statutory scheme providing for PUA benefits explains that determinations are subject to redeterminations as articulated by state law. In light of this statutory language, an applicant would not be justified in believing the original determination falls outside the purview of the relevant state's redetermination scheme, provided the state's redetermination scheme is followed.

13

*Cf. Hamby v. Neel*, 368 F.3d 549, 559 (6th Cir. 2004).

Michigan Compiled Law § 421.32a(1) states:

> Upon application by an interested party for review of a determination, upon request for transfer to an administrative law judge for a hearing filed with the unemployment agency within 30 days after the mailing or personal service of a notice of determination, ***or upon the unemployment agency's own motion within that 30-day period, the unemployment agency shall review any determination***. After review, ***the unemployment agency shall in its discretion issue a redetermination*** affirming, modifying, or reversing the prior determination and stating the reasons for the redetermination, or may transfer the matter to an administrative law judge for a hearing. If the unemployment agency issues a redetermination, it shall promptly notify the interested parties of the redetermination.

(emphasis added).

Here, the Court does not see—and Plaintiff has failed to point out—how Defendant erred in applying Michigan's statutory redetermination framework. The Second Determination Letter modified the first and stated the reasons for the redetermination. (Attachment 12, ECF No. 13 at Pg. ID 281.) The UIA issued the First Determination Letter on August 25 and issued the Second Determination Letter—which Plaintiff concedes was a "redetermination" (ECF No. 1 at Pg. ID 9, ¶ 23)—on September 15, which is within the 30 days provided for the agency to tap into its power to reconsider decisions. Based on this, no reasonable jury could conclude that issuing the redetermination fell outside the UIA's powers as

14

established by state law.

The Court recognizes that Plaintiff may have hoped to receive PUA benefits based upon the UIA's decision to issue an immediate determination of a weekly amount, despite Plaintiff's failure to demonstrate eligibility for the PUA benefits by self-certifying that he is unemployed because of one of the 11 reasons related to the COVID-19 pandemic. Nonetheless, Plaintiff is not *entitled* to PUA benefits, nor has he otherwise established a protectable property interest sufficient to trigger due process protections under the Fourteenth Amendment.

The Court next turns to whether Defendant retaliated against Plaintiff. To establish a *prima facie* claim of First Amendment retaliation, Plaintiff must demonstrate that:

> (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct.

*Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

Here, Plaintiff alleges:

> Defendant . . . retaliated against [him] for [] invoking the state judicial process by seeking a writ of mandamus to compel disbursement of approved PUA benefits in a timely fashion when, shortly after the filing of the

15

> complaint in state court, Plaintiff began getting emails and demands for information which is not required by the Cares Act (and which has not been required of others who have applied for PUA benefits), and, subsequently, rendered a "Determination Letter" of denial, notwithstanding the fact that a previous Determination had been rendered and Plaintiff was afforded no due process in connection with what in effect was a "redetermination" of Plaintiff's PUA application.

(ECF No. 1 at Pg. ID 9, ¶ 23.)

Defendant concedes that seeking a writ of mandamus is constitutionally protected conduct. (ECF No. 16 at Pg. ID 330 (citing *Gable v. Lewis*, 201 F.3d 769, 770-771 (6th Cir. 2000)). Even assuming that the issuance of the Second Determination Letter constituted an adverse action, Defendant argues that Plaintiff's claim fails because he has not alleged a causal connection between that adverse action and his pursuit of a writ of mandamus—instead, Defendant issued the letter only because Plaintiff was ineligible to receive PUA benefits. (*Id.*) Because Plaintiff did not respond to this argument, the Court deems the point conceded and Plaintiff's retaliation claim fails. *See Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007) (affirming the district court's conclusion that the plaintiff abandoned certain claims by failing to raise them in his brief opposing the government's motion to dismiss); *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010) (stating that where a plaintiff fails to respond to an argument in a motion to dismiss, "the Court assumes he concedes this point and

16

abandons the claim").

## CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff's claims cannot withstand Defendant's Motion to Dismiss.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (ECF No. 16) is **GRANTED**.

**IT IS SO ORDERED**.

s/ Linda V. Parker<br>LINDA V. PARKER<br>U.S. DISTRICT JUDGE

Dated: January 4, 2021